MARK BRNOVICH
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

JANA ZINMAN
ASSISTANT ATTORNEY GENERAL
CRIMINAL APPEALS SECTION
2005 N. CENTRAL AVENUE
PHOENIX, ARIZONA 85004-1580
TELEPHONE: (602) 542-4686
CADocket@azag.gov
(STATE BAR NUMBER 024019)

ATTORNEYS FOR RESPONDENTS

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Alexander Rodriguez,<br><br>Petitioner,<br><br>-vs-<br><br>Stephen Morris, et al.,<br><br>Respondents. | CV19–04957–PHX–JJT (MHB)<br><br>**SUPPLEMENTAL ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

On July 22, 2020, this Court ordered Respondents to file a Supplemental Answer addressing Petitioner Daniel Alexander Rodriguez's contention that his appellate counsel was ineffective for failing to present the issue of prosecutorial misconduct on direct appeal. Exh. V. Rodriguez asserts in his habeas petition that the prosecutor committed misconduct based on: (1) false and misleading statements during closing arguments, specifically referring to Celene's and Detective Hiticas's testimonies; (2) "fraud upon the court" on December 2, 2014, for admitting text messages; (3) vouching for witnesses; (4) burden shifting, commenting on his silence, and failure to produce evidence; and (5) deriding defense counsel. *Id.*; Exh. UU (exhibit from original Answer). Rodriguez's claims are meritless, however, because no prosecutorial misconduct occurred and his appellate counsel effectively represented him on direct appeal.

**A.     PROSECUTORIAL MISCONDUCT CLAIM.**

Rodriguez generally asserts in his habeas petition that the prosecutor's closing statement contained "misstatements of evidence, vouching for the credibility of government witnesses, expressing his opinion of Daniel's guilt, suggesting information beyond that presented to the jury, misstatements of law (burden shifting) and denigration of Daniel's counsel." Exh. UU, at 8–B. Although he underlined various statements made by the prosecutor during the prosecutor's closing arguments in the transcript he attached to his habeas petition, and pronounced those statements misconduct, he provided no basis, no explanation, and no legal argument for these contentions. His lack of legal knowledge as a pro se petitioner does not suffice as a basis for failing to present a legal argument. *See Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988); *see also Hughes v. Idaho State Bd. Of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Furthermore, "[c]onclusory allegations . . . do not warrant habeas relief." *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (quoting *James v. Borg,* 24 F.3d 20, 26 (9th Cir. 1994)). Respondents will nonetheless address each assertion.

Rodriguez first claims in his habeas petition, without providing the record citations, that the prosecutor committed misconduct when he made "false and misleading arguments" during the closing argument regarding Celene's eyewitness testimony, such as: "Celene already told you was the one who watched it all go down," and "Celene [saw] it all happening." Exh. UU, at 8–A, B; Exh. Q, at 26–27, 29, 40, 42. The prosecutor, however, properly summarized Celene's testimony. Contrary to Rodriguez's assertion, the prosecutor did not misstate the evidence or make a material misrepresentation about Celene's testimony. Celene clearly testified that: she heard fighting outside of her residence, heard a man angrily yelling at a young woman to get in the vehicle, saw a vehicle outside of her residence, and both heard and saw several gunshots when the young female did not initially get in the vehicle. Exh. K, at 48–58. Consistent with the prosecutor's

statements, Celene heard and witnessed the events that occurred on January 31. *Id*.; Exh. Q, at 26–27, 29, 40–42.

Rodriguez also claims, again without providing the record citations, that the prosecutor made the following false and misleading statements during his closing statement: "Detective Hiticas told you that he looked at both phones and that they both matched up. Of course, there was some deleted text messages on the defendant's phone, but the ones that weren't deleted, everything matched up. The phone calls the phone logs, the text messages." Exh. UU, at 8–A; Exh. Q, at 41. The prosecutor's statement summarizes exactly what the detective testified to during an evidentiary hearing on December 2, 2014. Exh. SS (exhibit from original Answer), at 117–21. As a result, the prosecutor did not make any false or misleading statements regarding Detective Vasile Hiticas's testimony at the evidentiary hearing, and Rodriguez fails to demonstrate otherwise.

The prosecutor properly summarized the testimonies of Celene and Detective Hiticas during his closing argument and the closing argument did not contain any false or misleading statements. Exh. UU, at 8–A, 8–B.

Second, Rodriguez claims that on December 2, 2014, the prosecutor committed "fraud upon the court in regards to having text messages admitted as evidence presented to the jury." Exh. UU, at 8–C. The text messages, however, were properly admitted and the prosecutor did not commit "fraud." During a bench conference on December 2, 2014, defense counsel made a foundational objection to admission of the text messages. Exh. SS, at 112–14. In order for the prosecutor to lay the proper foundation, the court held an evidentiary hearing, and Detective Hiticas testified at the hearing outside the presence of the jury. *Id*. at 115–16. Detective Hiticas testified that after finding one cell phone from Rodriguez's vehicle, he obtained a search warrant to view the contents of the phone. *Id*. at 117, 121, 127. A.G. told Detective Hiticas the phone belonged to Rodriguez and provided the detective with Rodriguez's phone number. *Id*. After

3

1  looking at A.G.'s phone, Detective Hiticas saw "numerous" text messages and
2  phone calls between A.G.'s phone number and Rodriguez's phone number. *Id*. at
3  118. Some of the text messages and phone calls were also coming from another
4  phone number. *Id*. In viewing the phone found in Rodriguez's vehicle, he found
5  exact matches as to phone calls and text messages to A.G., with A.G.'s phone
6  showing the calls and text messages were from Rodriguez. *Id*. at 118–19. The
7  phone also had "selfie" pictures of Rodriguez and A.G. *Id*. Although some of the
8  text messages had been deleted from the phone found in Rodriguez's vehicle, the
9  entire text conversation was on A.G.'s phone. *Id*. at 119–20. The detective was
10 able to obtain most of the deleted text messages from that phone, aside from the
11 text messages sent using the Haywire app. *Id*. at 120. In determining whether the
12 phone belonged to Rodriguez or his brother, the detective viewed a different
13 phone, found in an apartment and not Rodriguez's vehicle that contained only
14 Rodriguez's brother's information and pictures of his brother, but no pictures of
15 A.G. or A.G. and Rodriguez. *Id*. at 127–28. The court overruled the foundational,
16 hearsay, and relevance objections based on Detective Hiticas's testimony. *Id*. at
17 128–29. The court found there was sufficient foundation that the phone belonged
18 to Rodriguez and the text messages were not hearsay because they were
19 Rodriguez's own statements. *Id*.

20       Thus, the evidence and testimony presented at the evidentiary hearing on
21 December 2, 2014, demonstrate that the prosecutor did not commit "fraud" on the
22 court in order to have the text messages admitted as evidence. Exh. UU, at 8–C.
23 To the contrary, Detective Hiticas provided detailed testimony and analysis as to
24 why he believed the phone belonged to Rodriguez and that the text messages were
25 sent from Rodriguez's phone.

26       Third, Rodriguez contends the prosecutor improperly vouched for witnesses.
27 Exh. UU, at 8–B. However, he included no substantive legal argument, and his
28 lack of legal knowledge as a pro se petitioner does not suffice as a basis for failing

4

to present a legal argument. *See Martinez*, 862 F.2d at 1381. Furthermore, Rodriguez's statement regard alleged vouching is a "[c]onclusory allegation[] [and] . . . [does] not warrant habeas relief." *Gomez*, 66 F.3d at 204. Rodriguez simply wrote, "vouching for the credibility of government witnesses" in his habeas petition, Exh. UU, at 8–B, and wrote "vouching for credibility" next to the prosecutor's statements that A.G.'s testimony at trial was corroborated by witness testimony, video security evidence, bullet casings, and physical evidence. Exh. Q, at 39, 41; Exh. UU, at Exh. 4. The prosecutor explained in the closing statement that there were multiple instances of evidence corroborating A.G.'s testimony, which was true and did not amount to vouching. *Id*. Rodriguez has failed to argue or demonstrate otherwise.

Rodriguez also wrote, "vouching," without elaboration, in the transcript of prosecutor's closing argument, where the prosecutor argued in response to the defense counsel stating that the jury must look at the credibility of witnesses:

> The only witnesses that know the defendant are the [victim's] family. Mom met him once at a Burger King. Dad, I believe said he may have saw him in the house or saw him once. And, of course, we know [A.G.'s] relationship with the defendant. All other witnesses in this case have no motive, bias, or prejudice against the defendant.
>
> What does Celene Bensink have against this man sitting over there? What does Angel Maldonado, the neighbor, have against this man? Nothing. All those innocent victims, they have no skin in the game. They got nothing. They're just innocent bystanders, innocent victims.

Exh. Q, at 36; Exh. UU, at Exh. 4, at 36.

Rodriguez has failed to demonstrate that the prosecutor engaged in vouching. Simply writing "vouching," next to these statements fails to meet his high burden of showing "that the alleged misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986),

quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).  Rather, the prosecutor supported the defendant's argument by suggesting that A.G. and the A.G.'s family knew Rodriguez and therefore may have had a reason to have a prejudice against him.  Exh. Q, at 36.  Moreover, the prosecutor then stated that the other witnesses were "innocent victims" or "innocent bystanders." *Id*.  The prosecutor merely explained whether the witnesses had a relationship with Rodriguez or not, and did not vouch the credibility of the witnesses.  Rodriguez has failed to demonstrate any evidence of vouching.  However, even if the prosecutor had indicated during his closing argument that one party may have been lying, which he did not do, courts have "recognized that prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence, including that one of the two sides is lying." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993) (citations omitted.)

Fourth, Rodriguez asserts prosecutorial misconduct through burden shifting and the prosecutor commenting on Rodriguez's failure to testify or provide evidence in the following statement by the prosecutor during his closing:

> "At the end of the day, when you look at the State's case, and you look at all the evidence, the defendant doesn't have a burden at all, he doesn't have to present any evidence, and that's clear in your jury instructions.  And that's what happened here in this case.
>
> But what also that tells you is that everything that the State put in front of you is undisputed. All the evidence that came from the stand, all the physical evidence, the pictures, the tangible items, the casings, all of that is undisputed.  No one took that stand and said anything different than what Athena told you and what I told you in the opening statement what happened.  The State's case is undisputed what happened.

Exh. Q, at 51; Exh. UU, at Exh. 4 at 51.

Rodriguez failed to provide any legal or cohesive argument whatsoever for his alleged contention that the prosecutor: "burden shift[ed]," and commented on Rodriguez's silence, and Rodriguez's failure to produce evidence.  Exh. UU, at 8–B.  "Conclusory allegations . . . do not warrant habeas relief." *See Gomez*, 66 F.3d at 204.  Contrary to Rodriguez's conclusory assertion, however, the prosecutor explicitly stated Rodriguez "doesn't have a burden at all, he doesn't have to present evidence," and then referenced the jury's instructions from the court, which the jury is presumed to follow.  *See State v. Newell*, 132 P.3d 833, 847, ¶ 68 (Ariz. 2006).  The record therefore supports the opposite conclusion, that the prosecutor reiterated the jury's final instruction that the State had the burden of proving Rodriguez's guilt, and Rodriguez had no burden to prove he was innocent. Moreover, the prosecutor did not make a single comment about Rodriguez's failure to testify, nor did the prosecutor explicitly state that Rodriguez did not testify. To the contrary, the prosecutor simply stated that the evidence presented was undisputed. Disputed testimony or evidence could have been elicited through cross-examination, for example, and not simply through the defendant testifying. The prosecutor's statement was not a comment on Rodriguez's decision not to testify or produce evidence, nor did it shift the burden.

Furthermore, the court explicitly stated to the jury during its final jury instructions and in the closing argument that:

> The State must prove guilt beyond a reasonable doubt based on the evidence. The defendant is not required to produce evidence of any kind. The decision on whether to produce any evidence is left to the defendant, acting with the advice of an attorney. The defendant's decision not to produce any evidence is not evidence of guilt.
> . . . .
> [L]adies and gentlemen, the defense, as you know from the instructions, is not requires to produce any evidence, they're not, and that's in your instructions and that's clear.  Whether or not any of the evidence that was present was disputed is up to you to determine

7

based upon all of the information that you receive, and counsel obviously have different opinions about that.

Exh. Q, at 7, 68; Exh. UU, at Exh. 4. *See Newell*, 132 P.3d at 847, ¶ 68.

Additionally, after the defense counsel objected, the prosecutor argued he was "commenting on the evidence which [he was] allowed to do" and "[s]imply stating that the evidence was undisputed is not saying the defense has to present evidence, it's saying what evidence is in evidence at this point. . . It's clearly within the law that for me to do that, and that's what I was doing." Exh. Q, at 80.

The court found "that counsel [could] have a difference of opinion as to whether or not evidence, as it came in, and with cross-examination, was disputed or not, and that's something you *can* argue to the jury." *Id*. at 80–81. The court also found that it issued a curative instruction and that instruction "resolved any concern." *Id*. at 81. As further support for the complete lack of prosecutorial misconduct here, the court, in its final jury instructions, instructed the jury that: "In their opening statements, and soon in their closing arguments, the lawyers will have talked to you about the law and the evidence. What the lawyers say is not evidence, but it may help you to understand the law and the evidence." *Id*., at 5.

Thus, the prosecutor's statements that the evidence was undisputed did not shift the burden, did not comment on Rodriguez's decision not to testify, nor was it improper. *See State v. Sarullo*, 199 P.3d 686, 692 (Ariz. App. 2008) (holding, "When a prosecutor comments on a defendant's failure to present evidence to support his or her theory of the case, it is neither improper nor shifts the burden of proof to the defendant so long as such comments are not intended to direct the jury's attention to the defendant's failure to testify.")

Fifth, although Rodriguez contends that the prosecutor engaged in the "denigration" of his counsel, Rodriguez failed to elaborate and Respondents have found nothing to support this conclusory assertion. Exh. UU, at 8–B. After searching through the December 11, 2014 transcript Rodriguez attached as an

exhibit, the only indication he gave to suggest he was making the argument was the handwritten phrase, "Denigration of counsel" in the transcript. Exh. UU, at Exh. 4 at 69. "Conclusory allegations . . . do not warrant habeas relief." *See Gomez*, 66 F.3d at 204. After the prosecutor stated that the defense counsel argued two defenses—it was not an intentional act and it was not Rodriguez who committed the act—the prosecutor stated that the defense counsel "got up here and just tried to confuse the issues. It's a red herring, it's smoke and mirrors. He's doing it because he's representing his client, of course. But what's the defense? There wasn't any. There was none presented to you." Exh. Q, at 69. The prosecutor did not commit misconduct through these statements. Rather, he stated that the defense counsel was preforming his job by attempting to explain potential defenses. *Id.* Moreover, the prosecutor stated the defenses and tried to explain how those defenses were conflicting, which was a plausible argument. He did not "denigrate" defense counsel or attack him personally, and Rodriguez has failed to provide any argument whatsoever explaining how those remarks were allegedly prosecutorial misconduct.

Furthermore, although this Court stated in its July 22, 2020, Order, that Rodriguez argued prosecutorial misconduct occurred both during voir dire and the closing arguments, Respondents have been unable to find an argument from Rodriguez in his habeas petition regarding a claim for ineffective assistance of appellate counsel for failing to present the issue of prosecutorial misconduct during voir dire. Respondents will nonetheless address his prosecutorial misconduct argument during voir dire from his PCR petition per this Court's Order. Exh. V, at 2; Exh. U.

In his PCR petition, Rodriguez argued that the prosecutor committed misconduct during voir dire and "inflamed the passions of the jury" because the prosecutor: knew most of the jurors had children; stated the victim's age, 16 years old, three times; and then asked if anyone would consider A.G.'s age during her

testimony. Exh. CC (exhibit from original Answer), at 15; Exh. I, at 26–27. The prosecutor specifically said that the victim "just turned 17. When some of this was going on, she was 16. Anyone think that just because of someone's young age—granted, she's almost 18 now, or almost an adult, is anyone going to hold that against her as a witness, just because of her age, because she's technically a child?" Exh. I, at 27. He then noted that no one held up a card or indicated they would hold it against the victim. *Id.* Rodriguez failed to explain how a prosecutor asking potential jurors if they would "hold it against [the victim] as a witness" because she was underage amounted to misconduct. Exh. CC, at 15. Simply asserting it would "incit[e] and inflame passions" of the jury because most of them had children is a baseless argument that does not demonstrate the slightest hint of misconduct.

Moreover, in Rodriguez's petition for review to the Arizona Court of Appeals, Rodriguez did not reassert his prosecutorial misconduct claims during voir dire and closing arguments; rather, he presented the issue of whether his claims were colorable, precluded, waived, or procedurally barred for failing to raise it on direct appeal. Exh. GG (exhibit from original Answer), at 6–7. Thus, in addition to failing to raise his specific prosecutorial misconduct claims pertaining to voir dire and closing arguments on direct appeal, he also failed to raise those claims in his petition for review of his PCR petition to the Arizona Court of Appeals.[1] Exh. GG.

Rodriguez has therefore failed to demonstrate that the prosecutor committed any misconduct during voir dire or closing arguments, let alone misconduct so

---

[1] Although he argued prosecutorial misconduct in his March 26, 2018, petition for review to the Arizona Supreme Court, it was limited to closing arguments and he did not raise misconduct during voir dire. Exh. S, at 2–4, 10–11. The Arizona Supreme Court summarily denied review of this claim. Exh. T.

egregious that it "infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden,* 477 U.S. at 181.

## B. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

As stated in Respondent's Answer, Rodriguez's allegation of ineffective assistance of appellate counsel raised in his PCR petition was solely limited to his appellate counsel "not raising the cognizable claims." Exh. CC, at 25; Exh. DD (exhibit from original Answer), at 14–15; original Answer, at 7. He did not assert that his appellate counsel was ineffective for failing to argue prosecutorial misconduct occurred during voir dire and during closing arguments.[2] Exh. CC. Nor did he argue that his appellate counsel was ineffective for failing to argue prosecutorial misconduct occurred generally or during voir dire and/or closing arguments in his petition for review to the Arizona Court of Appeals after the court denied his PCR petition. Exh. GG. He simply argued in his petition for review that his appellate IAC claim was a colorable claim, and, as a result, he deserved a new trial. Exh. GG, at 2–9; original Answer, at 9.

Rodriguez argued that his appellate counsel was ineffective for failing to present the prosecutorial misconduct claim on direct appeal for the first time to the Arizona Supreme Court in his petition for review of the Court of Appeals' denial of his petition for review of his PCR petition. Exh. S, at 6–8. The Arizona Supreme Court summarily denied review of his claim. Exh. T.

---

[22] Nor did he argue that his trial counsel was ineffective for failing to argue prosecutorial misconduct during voir dire or closing arguments. Exh. CC. Rodriguez did not argue his trial counsel was ineffective for failing to contend prosecutorial misconduct during closing arguments at all. His argument that his trial counsel was ineffective during voir dire was that his counsel should have asked followed-up questions after the State asked an "improper question," not that prosecutorial misconduct occurred and his trial counsel was ineffective for failing to present the issue or object. Exh. CC, at 5.

11

As a result, Rodriguez's ineffective assistance of appellate counsel claim is technically exhausted and impliedly procedurally defaulted. Rodriguez presented his claim that his appellate counsel was ineffective for failing to argue prosecutorial misconduct for the first time in his petition for review to the Arizona Supreme Court of the Court of Appeals' denial of his petition for review pertaining to his PCR petition. Exh. S, at 6–8. He did not present this claim in his PCR petition, or in his petition for review to the Court of Appeals, and this claim is therefore impliedly-procedurally defaulted because he failed to present it through one complete round of state-court review. *See Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005); *accord Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). It would be futile to return to state court to properly exhaust the claim now and any attempt to do so would be barred as untimely and successive. *See Beaty v. Stewart*, 303 F.3d 975 (9th Cir. 2002). Despite the fact that his claim was procedurally defaulted, Respondents will nonetheless address Rodriguez's contention that his appellate counsel was ineffective for failing to argue the prosecutor committed misconduct in this Supplemental Answer.

Rodriguez's appellate counsel's decision to present the illegal search and seizure issue on appeal instead of the prosecutorial misconduct issue was legally sound. Rodriguez has failed to demonstrate that the prosecutor committed misconduct during either voir dire or closing arguments. His argument that prosecutorial misconduct occurred were conclusory assertions not supported by the record or the law. Rodriguez's appellate counsel therefore made the proper tactical decision to present the search and seizure issue on appeal, which *was* supported by the record and the law. As explained by Rodriguez's appellate counsel, it was "a strategic matter" and he elected not to argue prosecutorial misconduct because "[t]he case law [he] found did not support the arguments" and he "didn't want to weaken [Rodriguez's] best argument with weak points." Exh. UU, Exhibit 3 letter.

Thus, as explained in Respondent's original Answer, at 29:

> First, he failed to even allege, let alone demonstrate, deficient performance of his appellate counsel. Moreover, the determination of what issues to raise on appeal is left to the professional judgment of appellate counsel. *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983). "[T]he determination of what issues are appealable in view of the trial record is a matter of [appellate] counsel's judgment" and the United States Supreme Court has have that the "process of 'winnowing out weaker arguments on appeal and focusing on' those more like to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *State v. Herrera*, 183 Ariz. 642, 647 (App. 1995) (quoting *State v. Stanley*, 123 Ariz. 95, 106 (App. 1979), and *Smith v. Murray*, 477 U.S. 527, 536 (1986)). Further, appellate counsel is not required to raise an "untenable issue" on appeal. *Rogovich v. Ryan,* 694 F.3d 1094, 1106 (9th Cir. 2012) (*citing Turner v. Calderon,* 281 F.3d 851, 872 (9th Cir. 2002)).
>
> Nor has Rodriguez shown that he was prejudiced by his appellate counsel. In order to constitute a valid IAC claim, one must "must affirmatively prove prejudice" and show "that the errors *actually* prejudiced him." *See Calderon*, 255 F.3d at 1109. Rodriguez failed to allege, let alone demonstrate, prejudice. Accordingly, Rodriguez's ineffective assistance of appellate counsel claim is meritless.

Based on the foregoing, Rodriguez has failed to demonstrate that prosecutorial misconduct occurred during voir dire or closing arguments.  He also failed to show that his appellate counsel was ineffective for strategically deciding not to present the issue of prosecutorial misconduct on direct appeal.

. . .

. . .

Respondents respectfully request that Rodriguez's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice due to his claims being procedurally defaulted or meritless.

RESPECTFULLY SUBMITTED this 5th day of August, 2020.

>Mark Brnovich
>Attorney General
>
>J.D. Nielsen
>Habeas Unit Chief
>
>s/ Jana Zinman
>Assistant Attorney General
>
>Attorneys for Respondents

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2020, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and served the attached document by mail on the following, who is not a registered participant of the ECF System:

Daniel Alexander Rodriguez
ASPC Eyman- Rynning Unit
P.O. Box 3100
Florence, Arizona 85132

Petitioner, Pro Se

s/ S. Finch

Q9H4KJ2V0DNNR9

# LIST OF EXHIBITS

Exhibit A.  04/22/14 (status conference continued)

Exhibit B.  04/30/14 (complex case)

Exhibit C.  60/18/14 (complex case management conference)

Exhibit D.  07/29/14 (complex case management conference)

Exhibit E.  10/03/14 (evidentiary hearing)

Exhibit F.  10/27/14 (evidentiary hearing)

Exhibit G.  11/18/14 (pretrial conference)

Exhibit H.  11/19/14 (trial day one)

Exhibit I.  11/20/14 (trial day two)

Exhibit J.  11/24/14 (trial day three)

Exhibit K.  11/25/14 (trial day four)

Exhibit L.  12/01/14 (trial day five)

Exhibit M.  12/04/14 (trial day seven)

Exhibit N.  12/08/14 (trial day eight)

Exhibit O.  12/09/14 (trial day nine)

Exhibit P.  12/10/14 (trial day ten)

Exhibit Q.  12/11/14 (trial day eleven)

Exhibit R.  12/15/14 (trial day twelve)

Exhibit S.  03/26/18 PR to ASC

Exhibit T.  08/24/18 ASC Order denying PR

Exhibit U.  PCR (Exh. CC) exhibits

Exhibit V.  7/22/20 Court Order

Transcripts included in the original Answer:  12/2/14 (SS), 1/23/15 (TT)