MARK BRNOVICH
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

JANA ZINMAN
ASSISTANT ATTORNEY GENERAL
CRIMINAL APPEALS SECTION
2005 N. CENTRAL AVENUE
PHOENIX, ARIZONA 85004
TELEPHONE: (602) 542-4686
CADOCKET@AZAG.GOV
(STATE BAR NUMBER 024019)

ATTORNEYS FOR RESPONDENTS

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| Daniel Alexander Rodriguez, | CV 19–04957–PHX–DLR (MHB) |
|---|---|
| Petitioner, | |
| -vs- | |
| Stephen Morris, et al., | **OBJECTION TO REPORT AND RECOMMENDATION** |
| Respondents. | |

Pursuant to Federal Rules of Civil Procedure 6(a), (b), and 72, Respondents object to the Magistrate Judge's Report and Recommendation (R&R), issued on December 16, 2020, granting Petitioner Rodriguez's Petition for Writ of Habeas Corpus and suggesting that Respondents should potentially be sanctioned. Respondents respectfully request that this Court not adopt the R&R, deny Rodriguez's Habeas Petition, and not sanction Respondents.

First, Respondents respectfully disagree with the Magistrate Judge's finding that they should be potentially sanctioned for mishandling and misrepresenting the record. R&R, at 40. Throughout every part of these proceedings, Respondents faithfully attempted to: obtain the record, demonstrate transparency, and make good-faith arguments. Respondents do not believe the record was misrepresented, and any potential mishandling of the record was unintentional.

The Magistrate Judge stated that Respondents erred by originally arguing Rodriguez's Habeas Petition was untimely because it was based on a calculation of time that began on the Arizona Court of Appeals' denial of his petition for review of his PCR petition, and not the subsequent petition for review Rodriguez filed in the Arizona Supreme Court. R&R, at 5–6. When Respondents answer a Petition for Writ of Habeas Corpus, Respondents are not provided with the record, and must independently recreate the record and obtain documents from the various courts. Respondents rely on the court as an accurate source to create and obtain the record, and not information provided by a Petitioner because a Petitioner may be mistaken as to what is part of a court record, if a document was filed, and when a document was filed. Undersigned counsel emailed the Arizona Supreme Clerk's Office in this case to determine whether Rodriguez filed a petition for review related to his case, CR2014–107713–001. Sur-Reply, Exh. A. The Clerk's Office response did not include a petition for review from PCR proceedings, but did include other filings, such as Rodriguez's petition for review from his direct appeal, the September 15, 2016, order denying that petition for review, and the docket in that case. *Id*. Respondents included that information as Exhibits T, U, and QQ of the Answer, and the email exchange with the Clerk's Office to the Sur-Reply. *Id*. Respondents relied on this information and calculated the Habeas timeliness based on the last filing in the Court of Appeals denying Rodriguez's petition for review in determining that Rodriguez's Habeas Petition was untimely.

After the Magistrate Judge directed Respondents to address Rodriguez's claim that he filed a petition for review in the Arizona Supreme Court, Respondents re-contacted the Clerk's Office and was notified that Rodriguez had filed a petition for review in his PCR proceedings. As a result, Respondents apologized to both the Magistrate Judge and Rodriguez, explained the reasons for the timeliness argument, and retracted the untimeliness argument. Sur-Reply. Respondents were transparent with the Court in the Sur-Reply and did not attempt

to misrepresent the record. Respondents regret this occurred and will make a concerted effort to avoid this situation from happening in the future.

Next, the Magistrate Judge states that Respondents "lack[ed] transparency" in the interpretation of the trial court's findings as to Rodriguez's PCR claims. R&R, at 16–17. Respondents, however, attempted to be transparent in the trial court's findings by quoting the January 26, 2017, minute entry almost in its entirety in the Answer (aside from the sentence that the court explained what documents it read and considered in making its decision and the final sentence stating it summarily denied Rodriguez's PCR petition). Answer, at 8–9. Respondents then set forth arguments based upon the court's order. The trial court's order stated it "agree[d] with the State's Response that the defendant fails to raise a colorable claim for relief," discussed Rodriguez's failure to raise his prosecutorial-misconduct claim and abuse of the trial court's discretion claim in his direct appeal, found no deficient performance from his trial counsel, and summarily dismissed the remaining claims after adopting "the other reasons set forth in the State's response," which included Rodriguez's ineffective assistance of appellate counsel (IAAC) claim. *Id*. at 8–9, 28–29; Exh. FF. Because the State argued in its response that his appellate counsel was effective by selecting "the most promising issue" on appeal and rejecting a meritless issue, Respondents explained this as part of the trial court's summary denial. *Id*. at 28–29; Exh. DD. at 14–15. After reviewing the court's order for this Response, Respondents reach the same conclusion and analysis of the court's findings.

The Magistrate Judge next found that Respondents made assertions belied by the record in the Supplemental Answer, such as Rodriguez's PCR claim that his IAAC claim "was solely limited to his appellate counsel 'not raising the cognizable claims.'" R&R, at 18; Supp. Answer, at 11 (Exh. CC from Answer). Rodriguez mentioned his appellate counsel twice in his PCR petition—he listed his counsel's name on page 2, and also when he made the vague argument that his appellate

3

counsel was ineffective "for not raising the cognizable claims herein" on page 25. Exh. CC, at 25. He did not develop that claim in his PCR petition and his argument was limited to that one sentence. *Id*. at 25. As a result, Respondents argued that his IAAC claim was solely limited to not raising cognizable claims. Supp. Answer, at 11. After reviewing Rodriguez's PCR petition, Respondents believe this argument to be accurate. The Magistrate Judge found he asserted his IAAC claim regarding not arguing prosecutorial misconduct through that aforementioned quote, and his argument in his PCR Reply. R&R, at 18. Respondents did not consider Rodriguez's statement in his PCR Reply that his appellate counsel "'forfeit[ed]' 'plain error' prosecutorial misconduct and abuse of discretion [and] those claims were not waived," because arguments made for the first time in a PCR Reply Brief are waived. Exh. EE, at 3; *see State v. Lopez*, 223 Ariz. 238, 240, ¶¶ 6–7 (Ariz. App. 2009). Respondents interpreted Rodriguez's argument differently from the Court, but arrived at that conclusion in good faith.

Moreover, the Magistrate Judge found that the Respondents incorrectly argued his IAAC claim was not exhausted due to the prosecutorial-misconduct assertions. R&R, at 19. However, Respondents made that argument because it found that his IAAC claim in his PCR petition was limited to the one conclusory sentence ("for not raising cognizable claims"). Exh. CC, at 25. Upon review of Rodriguez's petition for review of his PCR petition, he does ask the question of whether his appellate counsel was ineffective for not raising claims of prosecutorial misconduct and abuse of discretion, but he does not argue that his appellate counsel was ineffective due to specific instances of prosecutorial misconduct. Exh. GG, at 3, 5. He also states his IAC inquiry and analysis could be found in his PCR petition, but that IAC analysis was limited to his trial counsel. Exh. CC, at 2–13; Exh. GG, at 5. Furthermore, once Respondents obtained Rodriguez's petition for review in the Arizona Supreme Court, they incorporated that petition in the Supplemental Answer. Respondents therefore argued

Rodriguez's IAAC claim relating to his prosecutorial-misconduct argument was exhausted because Respondents interpreted his argument in his PCR petition that his appellate counsel was ineffective for failing to argue cognizable claims, but did not specifically argue IAAC due to prosecutorial misconduct until his petition for review. This conclusion does not change even considering his IAAC claim in his petition for review before the Arizona Court of Appeals because a Petitioner in Arizona must present the same claim to the trial court and the Arizona Court of Appeals in order to properly exhaust the claim, and Rodriguez did not do so here. *See Castillo v. McFadden*, 399 F.3d 993, 998 & n.3 (9th Cir. 2005) (citation omitted). Thus, Respondents argued that his claim was exhausted.

Citing Rodriguez's PCR petition, Respondents also made the argument that Rodriguez did not argue his trial counsel was ineffective for failing to argue prosecutorial misconduct during voir dire or closing arguments, and his argument that his trial counsel was ineffective during voir dire was that his counsel should have asked follow-up questions after the State asked an "improper question." Supp. Answer, at 11; Exh. CC, at 5. Respondents interpreted Rodriguez's IAC claim during voir dire as his trial counsel should have asked follow-up questions after an improper question was posed by the prosecutor to the jury, not that it amounted to prosecutorial misconduct and his counsel erred by not objecting. Rodriguez's arguments about his trial counsel's ineffectiveness were: during voir dire the prosecutor asked an improper question and his counsel did not ask follow-up questions; the lead detective was questioned about the foundation of text messages at an evidentiary hearing and his counsel should have presented evidence that would have resulted in the inadmissibility of the text messages; his counsel made prejudicial statements in front of the jury and should have asked the trial court to question the jurors about potential bias or moved for a mistrial; his counsel did not impeach the detective about a photographic lineup; and his counsel did not object to the jury viewing the prosecutor's laptop during deliberations. Exh. CC, at

2–13. Moreover, the State's Response to the PCR Petition similarly characterized Rodriguez's IAC claims as Respondents' characterizations, and did not state that Rodriguez presented an IAC claim based on prosecutorial misconduct during voir dire or closing arguments. Exh. DD, at 8–14. Thus, after reviewing the PCR petition, Respondents conclude that Rodriguez's arguments in his PCR petition regarding his IAC claim centered around the aforementioned arguments and not on prosecutorial misconduct during voir dire or closing arguments. Exh. CC, at 2–13. Although the Magistrate Judge reached a different conclusion, Respondents did not intend to mislead or misrepresent the record at any point. Respondents made a good-faith argument based upon the record.

As to the Magistrate Judge's July 22, 2020, order that Respondents to file a Supplemental Answer and attach the trial transcripts not previously provided as well as the exhibits Rodriguez attached to his PCR petition, Respondents believed they had complied with the order. Exh. V (Supp. Answer). Respondents filed the Supplemental Answer and attached the remainder of the trial transcripts not previously provided, and, as noted on the List of Exhibits page of the Supplemental Answer, the exhibits from the 2016 PCR petition. Supp. Answer, at 15—Exh U. Exhibit U states it is the "PCR (Exh. CC) exhibits." Exhibit CC from the Answer is the November 14, 2016, PCR Petition. Answer, at 33. Respondents thought that the 2016 PCR petition exhibits were attached as Exh. U of the Supplemental Answer, but now realize the 2015 PCR exhibits were inadvertently attached. In other words, the Exhibit List properly referenced the correct PCR exhibits requested by the Magistrate Judge, but the incorrect PCR exhibits were attached. This was an unintentional error and not an attempt to evade a court order. The Magistrate Judge recognized that Respondents did not "address their mistaken reference to other documents as being those attachments in their Supplemental Answer," R&R, at 20, and that was because they did not realize the error had been made since the correct exhibit was listed in the Exhibit List. Undersigned counsel

1 ultimately provided the correct PCR petition exhibits in the subsequent filing
2 entitled, "Notice."
3       Moreover, opposing counsel kindly contacted undersigned counsel and
4 notified her that not all of the PCR petition exhibits were attached to the
5 Supplemental Answer. Undersigned counsel reviewed the Exhibit list submitted to
6 the court, saw that the 2016 PCR petition exhibits had been attached and listed as
7 Exhibit U, and that the transcripts had also been added as exhibits, and therefore
8 interpreted this to mean that Respondents had to contact the Maricopa County
9 Superior Court to independently obtain each exhibit referenced rather than simply
10 attach the 2016 Petition exhibits submitted by Rodriguez. As a result, undersigned
11 counsel notified the Magistrate Judge in the September 29, 2020, Notice, that she
12 did not attach several photographs (trial exhibits 58, 162–173), and a July 28,
13 2015, letter from Rodriguez's attorney to Rodriguez from the 2016 PCR petition
14 exhibits, and did not address accidentally attaching the 2015 PCR petition exhibits
15 instead of the 2016 PCR petition exhibits. Because Respondents separately
16 provided the transcripts as exhibits, which included the transcripts listed in the
17 2016 PCR petition exhibits, Respondents only addressed the photographs and letter
18 (the 2016 petition exhibits not listed independently on the List of Exhibits). Supp.
19 Answer, at 15; R&R, at 20.
20       Thus, although Respondents did not initially file the 2016 PCR petition
21 exhibits with the Supplemental Answer as ordered, Respondents believed
22 (regrettably, incorrectly) that they had. R&R, at 20. However, Respondents
23 nonetheless attached Rodriguez's exhibits in the Notice to the court, as recognized
24 by the Magistrate Judge. R&R, at 20; Notice, at 3—Exh. A. In the Notice,
25 undersigned counsel explained that she had contacted both the court operations
26 specialist from the Maricopa County Superior Court as well as the Maricopa
27 County Attorney's Office to try to get the official documents of the photographs
28 and the letter and not only what Rodriguez attached to the PCR petition.

Respondents filed the Notice to maintain complete candor and transparency with the Magistrate Judge. Respondents thereafter filed a Supplemental Notice to the Court and provided the unlabeled photographs obtained from the Maricopa County Attorney's Office. Supp. Notice. This Supplemental Notice was also Respondents' effort to be fully transparent with the Court.

Moreover, Respondents' argument in the Supplemental Answer that Rodriguez's prosecutorial-misconduct claims were conclusory assertions were in reference the Supplemental Answer's discussion of Rodriguez's prosecutorial misconduct claims in his Habeas Petition, which Respondents believe were conclusory. Supp. Answer, at 2–9, 12; R&R, at 39.

Despite the many stressors related to the Covid-19 pandemic, working on a part-time basis due to a serious medical condition, and having other court deadlines around the time frame of the Magistrate Judge's orders, undersigned counsel faithfully attempted to follow the Magistrate Judge's orders. Undersigned Counsel has been an attorney for 15 years, and has never been sanctioned by a court or had an allegation of misrepresenting or misleading the court. Throughout these proceedings, Respondents did not attempt to intentionally mislead the Magistrate Judge, not be completely forthcoming, or misrepresent the record. On the contrary, when Respondents believed that exhibits may not have been properly submitted to the Court or that Respondents may not have received all of the relevant petitions for review from the Clerk's Office, Respondents notified the Magistrate Judge, apologized, and attempted to obtain the documents as expeditiously as possible. *See* Sur-Reply, Notice, and Supp. Notice. Undersigned counsel takes her job responsibilities and these allegations very seriously, and always tries to make good-faith arguments, accurately represent the record, and be transparent with the court. If undersigned counsel failed to do so in this case, it was not intentional. Undersigned counsel truly regrets the foregoing errors and will make every effort to prevent this from occurring in the future.

**Procedural default**. Respondents re-urge the argument that Rodriguez's prosecutorial-misconduct claim was expressly-procedurally defaulted. Rodriguez did not present the claim on direct appeal, and, thereafter, the trial court dismissed his claim in PCR proceedings after finding it was non-cognizable and precluded under Rule 32.2(a)(3). Answer, at 19–21; Exh. FF (Answer). The Arizona Court of Appeals granted review, but denied relief after holding that Rodriguez failed to establish the court abused its discretion by denying his PCR petition, and the Arizona Supreme Court summarily denied review. Answer, at 9; Exh. II (Answer); Supp. Answer, at 10; Exh. S (Supp. Answer). Thus, Rodriguez's prosecutorial-misconduct claim was properly disposed of during PCR proceedings and it should not be considered on the merits here. Respondents will now address the R&R findings on prosecutorial misconduct.

**Misstating the testimony**. The R&R found the prosecutor improperly argued in his closing that Celene's testimony corroborated the victim's testimony. R&R at 23–25. The language used by the prosecutor shows he argued that Celene watched and heard the first shooting incident and that she heard an argument between a man and young woman. Exh. Q (Supp. Answer), at 26–30, 40–41. Although he stated the witnesses corroborated the victim's story, it was mostly limited to explaining that the victim said they had an argument and Rodriguez fired his gun. *Id*. Celene did not identify Rodriguez as the shooter, and although the prosecutor may have implied that she had in the closing argument, he also stated in other parts of his closing argument that she did not know the shooter. *Id.* at 29–30. The defense counsel did not object, and the trial court stated in its final jury instructions that the attorneys' opening and closing statements were not evidence. *Id*. at 6. *See United States v. Necoechea*, 986 F.2d 1273, 1280 (9th Cir. 1993) (holding prosecutor's improper remarks in closing argument did not constitute miscarriage of justice where court gave general instruction that attorneys' arguments were not evidence in the case).

As to the finding that the prosecutor misstated Tammy Tindall's testimony by saying the Tindalls "were running throughout the house, taking cover, checking to see if the kids, little children are safe. Innocent victims," Tammy testified that when she heard the gun shots she "flew out of bed" and she and her oldest child checked on the other children "to make sure they were okay." R&R, at 26; Exh. L, at 63–64; Exh. Q, at 28. These statements are consistent. Tammy also testified that she heard "arguing" and "yelling" and that was followed by gunshots. Exh. L, at 62–64. Although the prosecutor stated the whole Tindall family testified about the shooting, and the young children did not testify, the final jury instructions explained that the opening and closing statements were not evidence. Exh. Q, at 6, 41. *Necoechea*, 986 F.2d at 1280. Further, defense counsel argued in his closing that Celene, Tammy, her daughter, and her boyfriend did not see Rodriguez the night of the shooting. Exh. Q, at 60. Moreover, even if these statements pertaining to Celene and the Tindalls were misconduct, the misconduct was marginal, the court provided the jury instruction that opening and closing arguments were not evidence, the evidence of Rodriguez's guilt was overwhelming, and the comments did not deprive Rodriguez of a fair trial. *See Allen v. Woodford*, 395 F.3d 979, 998 (9th Cir. 2005) (although prosecutor's statement was misconduct, "given the trial court's instruction that statements by counsel were not evidence, and given the weight of the evidence against him, the prosecutor's comments did not deprive Allen of a fair trial"); *Necoechea*, 986 F.2d at 1280.

**Threatening text messages**. R&R, at 27–29. As to the prosecutor's statement that Detective Hiticas could testify all the text messages from Rodriguez's phone were sent to the victim's phone, he made that statement to the court outside of the jury and it could not have impacted the jury's findings of guilt. R&R, at 28; Exh. SS (Answer), at 113. Moreover, when Detective Hiticas testified that the text messages from Rodriguez's phone matched the text messages on the victim's phone, he clarified in his testimony that those were text messages included

"anything that wasn't erased [from Rodriguez's phone] or used through the text messaging application on the smart phones." Exh. O (Supp. Answer), at 93. He also explained the police looked at the GPS data of both phones. *Id*. at 91–92. Defense counsel objected to the introduction of the text messages and the classification of the phone as Rodriguez's phone. *Id*. at 93. In the prosecutor's closing argument, he discussed the same text messages that were found on both the victim's phone and Rodriguez's phone, but he also differentiated those text messages from deleted text messages when he said, "Of Course, there was some deleted text messages on defendant's phone but the ones that weren't deleted, everything matched up." Exh. Q, at 41. *See Necoechea*, 986 F.2d at 1280. Further, defense counsel argued in closing that the text messages, except for one, were all found on the victim's phone, the cell tower records did not prove anything, there was no evidence that Rodriguez had his phone at the time the text messages were sent, and other people had been in Rodriguez's vehicle. *Id*. at 64. Thus, while the prosecutor and detective made statements regarding the same text messages found on Rodriguez's and the victim's phones, they also made statements clarifying that it did not include all text messages, and defense counsel refuted their arguments. *Necoechea*, 986 F.2d at 1280.

**Improper vouching: sale of gun and purchase of ammunition**. R&R, at 29–31. Detective Hiticas testified concerning the "strap" and that he could not find information about what happened to the gun. Exh. O, at 95, 147. In the prosecutor's closing argument, he discussed that the detective tried to find the gun, but could not because whoever purchased the gun would not want to speak to police about a "hot" gun. Exh. Q, at 35. Rodriguez also argued in closing that the gun was not found. *Id*. at 66. Although the prosecutor made an inference about what happened with the gun, he did not say it was because of his position as a prosecutor, nor was his inference directed at Rodriguez, but rather at unknown individuals who potentially purchased the gun for a discounted price. *Id*. at 35.

During closing arguments, a prosecutor is allowed "reasonable latitude" and can argue "reasonable inferences from the evidence." *See United States v. Gray,* 876 F.2d 1411, 1417 (9th Cir.1995); *United States v. Gorostiza,* 468 F.2d 915, 916 (9th Cir.1972) (per curiam) (Prosecutors "may strike 'hard blows,' based upon the testimony and its inferences, although they may not, of course, employ argument which could fairly be characterized as foul or unfair."). Moreover, this inference about what happened with the gun did not have a substantial and injurious impact on the jury's verdicts given the court's instruction about closing arguments not being in evidence, which the jury was presumed to have followed, and the evidence of guilt was overwhelming. *See Fry v. Pliler,* 551 U.S. 112, 120 (2007); *Weeks,* 528 U.S. at 234.

It was also a reasonable inference for the prosecutor to argue in closing that Rodriguez bought the ammunition at Walmart because of: the security footage, the Walmart receipt showed ammunition was purchased around that time, and the victim additionally testified to that fact. R&R, at 31; Exh. Q, at 39. *See Gray*, 876 F.2d at 1417. Moreover, Rodriguez argued in response that there were no videos or photographs that showed him specifically purchasing bullets, and no record of his identification card being used to purchase the bullets. Exh. Q, at 65.

**Improper vouching: truthfulness of victim**. Although the R&R concluded that the prosecutor improperly vouched for the victim by stating she was not a liar during closing arguments, it was after the defense counsel asked if the victim was lying during his cross-examination of her. R&R, at 31; Exh. N, at 126. Moreover, the prosecutor did not imply he was assuring her veracity and did not state it was his belief that she was not lying. Exh. Q, at 37–41. *See Necoechea*, 986 F.2d at 1279 (prosecutor did not "imply a guarantee [] of truthfulness, refer to extra-record facts, or reflect a personal opinion"). Furthermore, Rodriguez repeatedly argued that the victim lied in his closing argument. Exh. Q, at 61–62. The prosecutor's comments were therefore not improper, much less prejudicial.

**Improper burden shifting and commenting on petitioner's silence**. R&R, at 32–35. Although the prosecutor stated the evidence was undisputed, he did not specifically comment about Rodriguez's failure to testify. Exh. Q, at 52, 67. A prosecutor may refer to the failure to call witnesses without shifting the burden of proof so long as he does not comment on the failure of the defendant to testify, which he did not do here. *See United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000) ("A prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof, and is therefore permissible, so long as the prosecutor does not violate the defendant's Fifth Amendment rights by commenting on the defendant's failure to testify."); *Menendez v. Terhune*, 422 F.3d 1012, 1034 (9th Cir. 2005) ("A prosecutor may ... ask a jury to convict based on the defendant's failure to present evidence supporting the defense theory."). After Rodriguez objected to the prosecutor's statement about undisputed evidence, the court sustained the objection, and the court, not the prosecutor, immediately issued a curative instruction to the jury. Exh. Q, at 67–68. Further, defense counsel argued in closing that the evidence was disputed and he reiterated several jury instructions, such as, the burden of proof, no requirement to present evidence or testify, and witness credibility. *Id*. at 53–57. Thus, although the prosecutor stated that the evidence was undisputed and Rodriguez did not call witnesses, the prosecutor did not comment on his failure to testify, and any potential confusion as to the State's burden was remedied with the court's curative instruction, the jury instructions on burden, and defense counsel's closing arguments. *Id*. at 6, 53–57, 81–82. *See State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160, 735 P.2d 767, 770 (Ariz. 1988) ("the trial court's cautionary instruction to the jury was sufficient to cure any harm.") (citation omitted); *State v. Jerdee*, 154 Ariz. 414, 418 (App. 1987) ("Improper argument can be cured by proper jury instruction.").

**Denigration of defense counsel**. The Magistrate Judge next found that the prosecutor denigrated defense counsel. R&R, at 35–37. The prosecutor discussed

13

1  defense counsel's "common tactic ... to always attack the victim in a case."  Exh.
2  Q, at 37.  The prosecutor also argued Rodriguez used the tactic of highlighting the
3  weak areas of the State's case, such as the State not having a video of him
4  purchasing the ammunition, and discrediting the State's witnesses.  *Id*. at 70–71,
5  74–75.  However, "[c]riticism of defense theories and tactics is a proper subject of
6  closing argument."  *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir.
7  1997).  As to the prosecutor's statement that defense counsel was trying to confuse
8  the issues, which was "a red herring" and "smoke and mirrors" as a way to
9  represent his client, defense counsel immediately objected and the trial court
10 sustained the objection.  Exh. Q, at 69.  *But see United States v. Ruiz*, 710 F.3d
11 1077, 1086–87 (9th Cir. 2013) ("[T]he prosecutor's characterization of the
12 defense's case as 'smoke and mirrors' was not misconduct.  The
13 prosecutor's comments were directed to 'the strength of the defense on the merits,'
14 and did not amount to an *ad hominem* attack on defense counsel.") (citation
15 omitted).  Moreover, the court also explained in both the preliminary jury
16 instructions and final jury instructions that a sustained objection meant the
17 information had to be disregarded, and juries are presumed to follow the court's
18 instructions.  Exh. Q, at 6; Exh. J. at 19–20.  *See State v. Newell*, 212 Ariz. 389,
19 403, ¶ 69 (Ariz. 2006) (court instructed jury in instructions that sustained objection
20 meant information must be disregarded, and because juries presume to follow
21 court's instructions, no effect on jury's verdict).  The jury was aware not to
22 consider those comments from the prosecutor.  Because the prosecutor's arguments
23 pertaining to the defense counsel were mostly tactical, any potential error in his
24 statements were sustained and not considered by the jury.  Also, the evidence
25 presented of guilt was overwhelming in this case, there was no substantial
26 prejudice to Rodriguez by these remarks, and the jury would not have been
27 affected by the statements.  *See Ruiz*, 710 F.3d at 1084–85.
28

**Cumulative error**. R&R, at 37. Even acknowledging that the prosecutor may have erred, the cumulative effect of those errors do not require reversal. Under *Brecht*, if the prosecutor's conduct amounted to constitutional error, which Respondents dispute, Rodriguez bears the burden of establishing that the errors had "substantial and injurious effect or influence in determining the jury's verdict[s]," and Respondents submit he did not meet his burden. *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). Although "a defendant is entitled to a fair trial, he is not entitled to a perfect trial, for there are no perfect trials." *United States v. Payne,* 944 F.2d 1458, 1477 (9th Cir.1991). Further, the combination of jury instructions, sustained objections, curative instruction, clarification statements about the record, and Rodriguez's closing statements were sufficient to cure any improper comments. *See, e.g., United States v. McChristian*, 47 F.3d 1499, 1507–08 (9th Cir. 1995). Moreover, given the overwhelming evidence of Rodriguez's guilt, he was less likely prejudiced by the effect of any cumulative errors. *See United States v. Flores*, 802 F.3d 1028, 1042 (9th Cir. 2015) (citation omitted). The Arizona Court of Appeals summarized the evidence as: Rodriguez "pulled a 9mm weapon out and shot multiple times [in the victim's general direction to get her 'attention'"; witnesses heard the victim crying, heard Rodriguez yelling at her, and heard the gunshots; three bullet holes were found in and around one of the witness's houses; two 9mm shell casing were found at the scene; after the victim tried to break up with Rodriguez, he sent her text messages that included, "tell your momma not to sleep on the couch cuz a bullet might hit her," "Be ready ... I got 83 rounds," and "we both gonna die"; 10 minutes after Rodriguez called the victim and asked her to come outside and she refused, eight shots were fired into her house; police found a 9mm bullet, two bullet shell casings, a sales receipt for the 9mm gun, and a cell phone containing threatening texts in Rodriguez's vehicle; false identification was found in Rodriguez's vehicle, and the victim was present both times Rodriguez

used the false identification. *See State v. Rodriquez*, 2016 WL 1033268, *1–2, ¶¶ 2–6 (Ariz. App. March 15, 2016). Thus, even if the prosecutor erred, any error was marginal and the cumulative effect was not so prejudicial as to warrant reversal. *See, e.g., United States v. Karterman,* 60 F.3d 576, 580 (9th Cir.1995) ("Because each error is, at best, marginal, we cannot conclude that their cumulative effect was 'so prejudicial' to [defendant] that reversal is warranted."). As a result of the foregoing, Respondents respectfully disagree that any potential prosecutorial misconduct constituted cumulative error.

**IAAC**. Finally, Respondents respectfully disagree with the Magistrate Judge's conclusion that Rodriguez was prejudiced by ineffective assistance of appellant counsel. R&R, at 38–39. "The law does not require counsel to raise every available nonfrivolous defense" and "Counsel also is not required to have a tactical reason–above and beyond a reasonable appraisal of a claim's dismal prospects for success–for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance,* 556 U.S. 111, 127 (2009) (citations omitted); *Jones v. Barnes*, 463 U.S. 745, 751–53 (1983). "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney,* 882 F.2d 1428, 1434 (9th Cir.1989). Here, Rodriguez's appellate counsel strategically elected not to argue prosecutorial misconduct on appeal, which, even if the issue was nonfrivolous, he was permitted to do. His counsel was therefore not ineffective for failing to raise the prosecutorial misconduct claim on appeal.

Based on the foregoing authorities and arguments, Respondents respectfully request that this Court not adopt the R & R, deny the Petition for Writ of Habeas Corpus and dismiss it with prejudice, and not impose sanctions on Respondents.

. . .

DATED this 30th day of December, 2020.

Respectfully submitted,

Mark Brnovich
Attorney General

J.D. Nielsen
Habeas Unit Chief


s/ Jana Zinman
Assistant Attorney General

Attorneys for Respondents

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2020, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and served the attached document by mail on the following, who is not a registered participant of the ECF System:

Donna Lee Elm, Esq.
1465 W. Wagon Wheel Rd.
Cottonwood, AZ 86326
donnaelm1014@gmail.com

Petitioner, Pro Se


s/ S. Finch


PNNAK4AM0DKBON